# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CASE NO: 3:03CR181

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| | ) |
| vs. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| | ) |
| GARY DEAN WHITE, | ) |
| Defendant. | ) |
| | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Withdraw Plea" (Document No. 205), filed April 21, 2006, by the Defendant, Gary Dean White, and the "Government's Opposition to Defendant's Motion to Withdraw His Guilty Plea" (Document No. 207), filed May 18, 2006. The motion has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), and this matter is now ripe for disposition. Having fully considered the arguments, the record, and the applicable authorities, the Court respectfully recommends that the Defendant's motion be <u>denied</u>, as discussed below.

## I. BACKGROUND AND FINDINGS

On October 28, 2003, the Defendant was indicted for conspiracy and federal narcotics violations. He was arrested on the indictment on December 10, 2003. The Defendant pleaded not guilty and was detained pending trial. On June 28, 2004, the Defendant was released on a $50,000 unsecured bond under twenty-four hour electronic monitoring. He was released from electronic monitoring on August 26, 2004, to cooperate with law enforcement.

On October 8, 2004, the Defendant signed a plea agreement setting forth his intention to

1

plead guilty to conspiracy to possess with the intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841 and 846 (count one of the Bill of Indictment). The agreement set forth the statutory sentence for this charge–an $8,000,000 fine and a mandatory life sentence. The Defendant agreed to cooperate with the Government (if such cooperation was requested), and he also agreed to not violate any federal, state or local law, or any court order involving conditions of his pretrial or pre-sentence release.

A Plea and Rule 11 hearing was held before United States Magistrate Judge Carl Horn, III, on October 25, 2004. The Defendant pleaded guilty in accordance with his written plea agreement, and the Court accepted his plea.

On August 30, 2005, Officer Mark Hall filed a violation report (Document No. 169) with the Court indicating that the Defendant had violated several terms of his pretrial release. Officer Hall asserted that the Defendant had changed his residence without notifying his probation officer and was considered an absconder from supervision from June 2005 until August 22, 2005. The Defendant had also been arrested in Gastonia, North Carolina on July 18, 2005, for possessing crack cocaine. Other alleged violations of his pretrial release included failing to report to his pretrial services officer and failing to avoid others involved in the unlawful use of drugs. Officer Hall recommended that the Defendant's bond be revoked and that he be taken into custody. The Defendant was taken into custody in January 2006.

Around the same time frame, the Defendant's counsel left the private practice of law and sought leave to withdraw from representation of the Defendant. That withdrawal was allowed, and the Defendant's new counsel, Mr. Pete Anderson, was appointed in January 2006. Mr. Anderson arranged a meeting involving the Defendant, the Defendant's attorneys, and law enforcement officers

for both Gaston County and Kings Mountain. After this meeting, the officers allegedly indicated that the Defendant's potential assistance could aid law enforcement. The Government, however, refused to allow the Defendant to be released to cooperate based on his alleged pretrial release violations. The Government's refusal to permit the Defendant to continue cooperating, and the mandatory life sentence facing him, prompted the Defendant to move to withdraw his guilty plea.

In his motion to withdraw, the Defendant argues that the only reason he signed the plea agreement carrying a mandatory life sentence was because he believed he would be given a fair and reasonable opportunity to avoid the sentence by providing substantial assistance. He claims that he had compelling grounds for violating his bond conditions and that the government is unreasonably depriving him of his ability to continue providing substantial assistance. He claims that other defendants who violate their bond conditions have been given additional opportunities to cooperate, and that the Government's decision not to allow him to cooperate is unreasonable and unfair given the extreme sentence he is facing. In response, the Government argues that the Defendant has failed to meet his burden of demonstrating a fair and just reason to permit the withdrawal of his guilty plea.

This Court held an evidentiary hearing on the Defendant's motion on May 31, 2006. The Defendant was represented by attorney Pete Anderson. United States Attorney Gretchen Shappert appeared for the Government. The Defendant and the Defendant's aunt and father testified on behalf of the Defendant. U.S. Probation Officer David Mark Hall and Detective Starling testified for the Government.

The Defendant testified that at the time he was released on bond he was living with his child's mother in Kings Mountain. The Defendant changed residences when his father became ill with heart problems, diabetes, asthma and gout. The Defendant moved in with him to cook his

3

meals, wash his clothes, and administer his medications. His father's telephone was eventually disconnected, and the Defendant did not have a cellular phone or transportation while living with his father. The Defendant testified that he attempted to contact Officer Hall on several occasions using a neighbor's telephone.

The Defendant testified further that he assisted the police with a couple of buy busts and deals working with Officer Jim Poole and Detective Aaron Starling. He claims that his re-arrest on July 18, 2005, was a set-up and that the cocaine found on his person on that occasion did not belong to him. The Defendant described the events leading up to that arrest. He claimed that he was attempting to work a deal involving Neil Terry and Randolph Austin (a/k/a "Dog"). The effort lasted throughout the evening and into the early morning hours of the following day. The Defendant testified that he attempted to contact Officer Poole several times throughout the deal using Terry's cellular phone outside of Terry's presence. He believes Terry observed Officer Poole's telephone number on his phone, obtained drugs from Dog, and planted them in the room where the Defendant was sleeping to set him up. Gastonia police officers arrived at Terry's home around 4:00 a.m. and arrested the Defendant. The Defendant told the arresting officer that he was working with law enforcement on the deal. He testified that he became scared when he awoke and saw the cocaine because he knew it would be a violation of his pre-trial release to be found in the presence of drugs. The Defendant testified it was this fear that led him to stuff 5.5 grams of cocaine base up his buttocks.

On cross-examination, the Defendant testified that he recognized the written plea agreement and his signature on it. He recalled having discussed the agreement with his former counsel, and remembered the details of the plea hearing. He recalled Judge Horn informing him of the pending

charges and the mandatory life sentence. He also remembered agreeing to not violate any federal, state or local law, or any court order involving conditions of his pretrial or pre-sentence release.

Regarding his efforts at cooperation, the Defendant testified on cross-examination that he remembered talking with Agent Eric Davis on several occasions and being told to contact him when he had information to provide. The Defendant never did contact Agent Davis. The Defendant added, however, that Agent Davis had instructed him to work with Officer Poole and Detective Starling. He remembered signing the Informant Conduct Agreement provided by Detective Starling outside of the presence of his counsel. He understood that the agreement required that he not possess or purchase any narcotics without first notifying an officer of the Gastonia Police Department and without following that officer's instructions.

The Defendant claimed he did attempt to maintain contact with Officer Hall while on pre-trial release, and that Officer Hall visited him at his father's home two or three times. He could not recall if Officer Hall had ever given him permission to stay with his father. The Defendant testified that he had not seen or spoken to Officer Hall from the date of his re-arrest on July 18, 2005, to the day of the hearing on May 31, 2006. He further testified that he had no knowledge that a warrant had issued for his arrest on August 30, 2005. Although he claims he had been working construction during the daytime hours, he did not provide Officer Hall with any pay stubs to verify this employment. Following his arrest on July 18, 2005, he was released on bond again. His next contact with law enforcement occurred when an officer pulled him over on January 9, 2006, in a case of mistaken identity. He was arrested at that time on the outstanding warrant pertaining to his alleged pretrial release violations.

Sylvia Smith and J.T. White, the Defendant's aunt and father, respectively, corroborated the

Defendant's testimony that he moved in with his father to care for his needs, and that he attempted to contact his probation officer by phone during that time frame. At the time of the hearing, J.T. White was under hospice care and expected to live only a few more months. Mr. White testified that he moved in July of 2005, and that the Defendant assisted him with the move. He further testified that he recalled a probation officer visiting his home a few times.

U.S. Probation Officer Mark Hall testified for the Government that he had informed the Defendant that he was required to maintain frequent contact and to inform him of any change in residence. Officer Hall had appointments with the Defendant scheduled for June 30 and July 21, 2005, and the Defendant failed to appear on both occasions. The Defendant did not inform Officer Hall that he intended to move in with his father. As a result, Officer Hall sought a warrant for his arrest. Officer Hall received several voice mail messages from the Defendant in August of 2005 after the warrant had issued. The next contact he received from the Defendant was January 19, 2006, subsequent to his third arrest.

On cross-examination, Officer Hall testified it is the policy of U.S. Pretrial Services in the Western District of North Carolina that if an individual is released on bond and violates the conditions of release, the privilege to work as a confidential informant is revoked.

Detective Aaron Starling of the Gastonia Police Department testified that he provided the Defendant with the Informant Conduct Agreement and covered each detail fully. He was the Defendant's primary handler, and he worked with the Defendant on two controlled purchases in April and May of 2005, with money provided by the Gastonia Police Department. In June of 2005, he received information from confidential sources that the Defendant was dealing narcotics on the street. Detective Starling provided this information to officers. Patrol officers informed Detective

Starling that they had arrested the Defendant on July 18, 2005, but according to Detective Starling, neither he nor Officer Poole were working on a deal with the Defendant on that date.

On cross-examination, Detective Starling testified that he presented the Informant Conduct Agreement to the Defendant when he appeared at the Police Department alone without counsel. He did not provide anyone a copy of the agreement because such agreements are kept confidential to protect the informant. Detective Starling informed the Defendant's counsel that he would be cooperating with the Police Department. Detective Starling testified that had the Defendant contacted him to attempt to arrange a drug deal with Terry or Dog, he would have organized a controlled purchase at a time convenient to law enforcement. Detective Starling also testified that the Defendant was arrested at around 4:00 a.m. on a Sunday morning, and that the Gastonia Police Department does not typically conduct controlled drug purchases at that time of the day.

Additional evidence in the case consists of affidavits filed by the Defendant's counsel in both this federal matter and in a pending state charge. Attorneys Pete Anderson and Charles Hubbard state in their affidavits that they attended a meeting at the Gaston County jail on March 21, 2006, with the Defendant and several members of the Kings Mountain and Gaston County Police Departments. Anderson arranged the meeting to allow the Defendant an opportunity to demonstrate his ability to assist law enforcement in the apprehension of individuals suspected of dealing in drugs. Both lawyers believed that the officers in attendance were satisfied that the Defendant was credible and knowledgeable and could be useful in their investigations. Approximately a week after this meeting, Anderson learned that the United States Attorney was not willing to allow the Defendant to continue providing assistance. He received a letter confirming that position on April 7, 2006.

The Defendant sought to withdraw his guilty plea two weeks later. For the purpose of the

motion, the parties do not dispute that there was a written plea agreement indicating a mandatory life sentence. It is also undisputed that the Defendant violated the conditions of his pretrial release. The sole issue before the Court is whether the Government unfairly and unreasonably denied the Defendant the opportunity to provide substantial assistance, and if so, whether this represents a fair and just reason for seeking withdrawal of his guilty plea.

## II. LEGAL ANALYSIS AND CONCLUSIONS

Federal Rule of Criminal Procedure 11 (d)(2)(B) provides, in pertinent part, that a defendant may withdraw a guilty plea after the court accepts the plea, but before a sentence is imposed, if the defendant can show a fair and just reason for seeking the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). It is within the court's discretion to decide whether an adequate basis exists upon which to grant a motion to withdraw a guilty plea. United States v. Bowman, 348 F.3d 408, 413-14 (4th Cir. 2003). Of primary significance in resolving this inquiry is the Rule 11 colloquy at which the Defendant entered his guilty plea. Id. at 414. "A properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." Id. Moreover, if it is to serve a reliable and meaningful function, the Court must recognize that it raises a strong presumption that the plea is final and binding. United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992). The defendant bears a heavy burden where, as here, the court expressly warns a defendant at the Rule 11 hearing of potential results different from those he anticipates because of a prior event or advice of counsel. Id.

In addition to the colloquy, the Court should evaluate six circumstantial factors in considering whether a defendant has met his burden under Rule 11 (d)(2)(B). United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). The factors to be considered are: (1) whether the

8

defendant provided credible evidence that his plea was not knowing or voluntary; (2) whether the defendant credibly asserted his legal innocence; (3) whether there was a delay between entering the plea and moving for withdrawal; (4) whether the defendant had close assistance of competent counsel; (5) whether withdrawal will prejudice the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources. Id.

These factors are nonexclusive and not equally weighted. United States v. Sparks, 67 F.3d 1145, 1154 (4th Cir. 1995). The Fourth Circuit emphasized in Sparks that the first, second, and fourth factors enunciated in Moore are most relevant in determining whether the defendant has demonstrated a fair and just reason to withdraw a plea; and that the "third, fifth and sixth factors are better understood as countervailing considerations that establish how heavily the presumption should weigh in any given case." United States v. Sparks, 67 F.3d 1145, 1154 (4th Cir. 1995). However, under Sparks, the Court may refrain from quantifying the level of inconvenience to the system, where the Court's conclusions regarding the first four Moore factors weigh in favor of the United States. Id.

Turning now to the evidence in the case, the Court finds that the Rule 11 colloquy was properly conducted and forms no basis for withdrawing the Defendant's guilty plea. United States Magistrate Judge Carl Horn, III, conducted the colloquy on October 25, 2004. The Court administered the oath and fully informed the Defendant of the charge against him, the mandatory life sentence he faced, and the rights he was entitled to and was waiving by pleading guilty. The Court informed the Defendant that he would receive a mandatory life sentence unless the Government filed a motion for downward departure. The Defendant was warned that his ability to withdraw his plea would be severely limited. The Defendant acknowledged his understanding of the proceedings and

9

pleaded guilty to the charge.

The terms of the agreement were related to the Court in greater detail by Assistant United States Attorney David Brown. Mr. Brown then stated to the Court that the Defendant would plead guilty to count one set forth in the Bill of Indictment, that the remaining counts would be dismissed at the time of sentencing, and that the Defendant was aware that the statutory penalties for that count were an $8 million fine and a mandatory term of life imprisonment. Thereafter, the Defendant indicated that no one had made any promises of leniency or a light sentence to induce him to plead guilty, and that he was satisfied with his attorney's services. The Court concludes from the entirety of the colloquy transcript, and the Defendant's testimony before the undersigned, that he understood the terms and consequences of his plea, and further finds that the colloquy provides no basis for withdrawal of the Defendant's plea. See United States v. Bowman, 348 F.3d 408, 413-14 (4th Cir. 2003).

Additionally, having considered the evidence in light of the six factors in United States v. Moore, 931 F.2d 245 (4th Cir. 1991), the Court concludes that the Defendant has not met his burden under Rule 11 (d)(2)(B). Indeed, defense counsel conceded during the hearing that the Defendant's motion was not amenable to conventional treatment under Moore. Notwithstanding, the Court addresses each factor briefly.

The Defendant made no showing regarding the most relevant Moore factors: he provided no evidence that his plea was not knowing or voluntary; he has not asserted his legal innocence; and he concedes that his counsel was competent. Analysis of the remaining three Moore factors likewise provides insufficient support for the Defendant's motion to withdraw.

The Court addresses the least significant of the Moore factors in tandem, and finds that

permitting the Defendant to withdraw his plea would result in prejudice to the government and some inconvenience to the judicial system. Withdrawal of the plea approximately 18 months following the Defendant entering a plea agreement, would result in some prejudice to the Government. The case involved numerous defendants, most of whom have entered guilty pleas. Moreover, memories fade with the passage of time, and the ability to locate witnesses becomes more difficult. The Court is reluctant to find substantial inconvenience would result to the judicial system in this case if the Defendant were permitted to withdraw his plea. However, as stated above, the Court may refrain from quantifying the level of inconvenience to the system, where the Court's conclusions regarding the first four <u>Moore</u> factors weigh in favor of the United States. United States v. Sparks, 67 F.3d 1145, 1154 (4th Cir. 1995).

Only one factor in <u>Moore</u> tends to support the Defendant's position. The Defendant signed the plea agreement on October 8, 2004, and filed his motion to withdraw the plea 18 months later, on April 21, 2006. This is a significant delay. However, the Defendant contends that this is not the time line that matters because he filed his motion within two weeks of receiving a letter confirming the Government's position, at which time he felt he was being treated unfairly. The Court finds that, while this factor cuts in favor of the Defendant, this forms an inadequate basis for withdrawal of the plea.

The Defendant has thus failed to demonstrate a fair and just reason for the withdrawal of his plea either through the Plea and Rule 11 colloquy or pursuant to analysis under <u>Moore</u>. Rather, the Defendant contends that the Government's refusal to permit the Defendant to continue to cooperate subsequent to his violating the conditions of his pretrial release is arbitrary, unfair, and unreasonable. While the Court understands the tremendously high stakes involved for the Defendant on these facts,

11

it cannot agree. The plea agreement expressly provides that any violation of the conditions of the Defendant's pretrial release would relieve the Government of its obligations under the plea agreement, and that the Defendant would not be allowed to withdraw his guilty plea. The Defendant concedes that he violated the conditions of his pretrial release. Moreover, the plea agreement does not obligate the Government to request the Defendant to cooperate. The Court finds that under the circumstances presented here, the Defendant's numerous and substantial violations of the conditions of his release provided a legitimate basis for the Government's action.

Based on the foregoing, the Court concludes that the Defendant has not presented a fair and just reason for the withdrawal of his plea, and respectfully recommends that his motion to withdraw be <u>denied</u>.

### III. RECOMMENDATIONS

**FOR THE FOREGOING REASONS**, the Court respectfully recommends that the Defendant's "Motion to Withdraw Plea"(Document No. 205), filed April 21, 2006, be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within ten (10) days after service of same. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D. N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to <u>de novo</u> review by the district court, <u>Snyder</u>, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

<u>The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Graham C. Mullen.</u>

Signed: June 14, 2006

*[signature]*

David C. Keesler
United States Magistrate Judge